IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00999-PAB-KAS

HEATHER HUTCHISON,

     Plaintiff,

v.

RANCH AND HOME SUPPLY, LLC d/b/a MURDOCH'S RANCH & HOME SUPPLY,

     Defendant.

---

## ORDER

---

This matter comes before the Court on Defendant's Motion for Summary Judgment [Docket No. 69] and Plaintiff's Motion to Strike Materials Attached to Defendant's Motion for Summary Judgment [Docket No. 78]. On August 27, 2024, plaintiff Heather Hutchison filed a response to the motion for summary judgment of Ranch and Home Supply, LLC d/b/a Murdoch's Ranch & Home Supply ("Murdoch's). Docket No. 79. On September 10, 2024, Murdoch's filed a reply. Docket No. 83. On September 11, 2024, Murdoch's filed a response to Ms. Hutchison's motion to strike. Docket No. 84. On September 24, 2024, Ms. Hutchison filed a reply. Docket No. 86. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

Ms. Hutchison brings a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), for disparate treatment on the basis of her sex, Docket No. 64 at 17-18, and claims under the Family Medical Leave Act ("FMLA") for

interference with her rights under the FMLA and retaliation for engaging in FMLA-protected conduct, 29 U.S.C. § 2615(a).  *Id.* at 19-20.

## I.    UNDISPUTED FACTS[1]

On November 17, 2008, Murdoch's hired Ms. Hutchison to work as a part-time cashier at its store in Littleton, Colorado.  Docket No. 69 at 2, ¶ 1.  On or around April 14, 2019, Ashley Foster, regional manager for Murdoch's, selected Ms. Hutchison for the role of store manager at Murdoch's store in Cheyenne, Wyoming.  *Id.*, ¶ 2.  Ms. Foster selected Ms. Hutchison because Ms. Foster believed that Ms. Hutchison "was particularly well-suited to deal with a series of management and personnel issues at the store." *Id.*, ¶ 3.  Ms. Hutchison's performance as a store manager was evaluated, in part, based on her ability to drive and manage sales, achieve "excellent operations and management," protect company assets, maintain "excellent customer service," and motivate and train staff.  *Id.* at 2-3, ¶ 4.  Her performance was also evaluated in accordance with Murdoch's "five basic principles," leadership, salesmanship, product knowledge, merchandising, and maintenance.  *Id.* at 3, ¶ 5.  On December 7, 2020, Ms. Hutchison discussed with her medical provider "coming out to her work place, as she often feels she is living a lie."[2]  Docket No. 79 at 8-9, ¶ 21.

---

[1] The following facts are undisputed unless otherwise noted.

[2] Neither party in their statements of facts asserts the protected category that Ms. Hutchison identifies with.  However, the parties reference the fact that Ms. Hutchison is a lesbian woman, which Murdoch's does not dispute.  *See* Docket No. 69 at 11 ("And the undisputed record indicates that Foster terminated Plaintiff for just those reasons, not because of Plaintiff being a woman or homosexual."); Docket No. 79 at 13 ("Plaintiff is a lesbian woman, placing her within the scope of a protected class under Title VII, which prohibits discrimination based on her sex, including sexual orientation.").  In the parties' final pretrial order, the parties stipulate that "Plaintiff is an individual within the meaning of 42 U.S.C. § 2000e-2(a)(1)."  Docket No. 88 at 11, ¶ 1.

In January 2021, Ms. Foster received calls from Nate Winters and Madison Warfelli, who were members of the management team at Murdoch's store in Cheyenne. Docket No. 69 at 3, ¶ 9.[3]  Mr. Winters and Ms. Warfelli "complain[ed] about Plaintiff's management style and effectiveness, and the fact that she was spending too much time away from the store."  *Id.*  Beginning in January 2021, Ms. Foster discussed these concerns with Ms. Hutchison.  *Id.*

On or around April 19, 2021, Ms. Hutchison advised Ms. Foster that she would be taking FMLA leave, starting on April 21, 2021.  *Id.* at 4, ¶ 11.  Ms. Hutchison took FMLA leave from April 21, 2021 through May 5, 2021.  *Id.*, ¶ 12.  On May 13, 2021, Ms. Foster spoke with Ms. Hutchison "about concerns regarding her lack of communication with her store team and told Plaintiff that she should have told her team how long she would be out on FMLA leave."  *Id.*, ¶ 13.  Ms. Foster told Ms. Hutchison that an "anonymous complaint about Plaintiff was due to her being absent from the store."  Docket No. 79 at 6-7, ¶ 3.[4]  Ms. Foster also questioned Ms. Hutchison's "commitment to her team."  *Id.*

---

[3] Ms. Hutchison denies this fact, arguing that it is "[i]nadmissible hearsay, unsupported by testimony or declarations" and that "Plaintiff was never informed of these complaints." Docket No. 79 at 2, ¶ 9.  She cites to her declaration in support of her denial.  *Id.* (citing Docket No. 79-1 at 4, ¶ 14).  As discussed in the Court's ruling on Hutchison's motion to strike, the Court finds that these statements are not inadmissible hearsay.  In her declaration, Ms. Hutchison states that complaints were required to be "well documented" and that the "lack of documentation" is "highly unusual or is not in accordance with [] policies and procedures."  Docket No. 79-1 at 4, ¶ 14.  This is not a denial.  Accordingly, the Court deems this fact admitted.

[4] Murdoch's admits that Ms. Foster made these statements, but disputes that the absences discussed in the anonymous complaint concerned Ms. Hutchison's absence during her FMLA leave.  Docket No. 83 at 4, ¶ 3.

Ms. Hutchison terminated Mr. Winters, and Ms. Warfelli left her position.  Docket No. 69 at 4-5, ¶ 18.  Ms. Hutchison then hired Trevor LaRose as the new assistant manager, hired Jaelynn Chappell as the new clothing manager, and promoted Jheri Marriott to assistant store manager in Cheyenne.  *Id.*

Because Cheyenne Frontier Days is a "major civic event" that "Murdoch's treats as a significant sales opportunity," management at the Murdoch's Cheyenne store plans for Cheyenne Frontier Days "over a period of weeks in advance."  *Id.* at 5, ¶¶ 19-20.  It was reported to Ms. Foster that, on the first day of Cheyenne Frontier Days, Ms. Hutchison "scheduled herself to open the Cheynne store," but "failed to show up on time to open the store."  *Id.*, ¶ 21.[5]  On July 27, 2021, Ms. Marriott, Mr. LaRose, and Ms. Chappell informed Ms. Foster that Ms. Hutchison had told them that Ms. Hutchison "talked to Murdoch's owners about working remotely in a different position," which caused Ms. Foster to "question Plaintiff's dedication as the store manager at Cheyenne."  *Id.*, ¶ 22.[6]  After August 2021, Ms. Marriott, Mr. LaRose, and Ms. Chappell

---

[5] Ms. Hutchison denies this fact, arguing that "LaRose was scheduled to open on the first day of [Cheyenne Frontier Days], but he overslept and arrived late" while "Plaintiff's schedule was flexible based on the needs of the business."  Docket No. 79 at 3, ¶ 21.  However, this denial is not responsive to Murdoch's assertion that Ms. Foster received reports that Ms. Hutchison was scheduled to open the store on the first day of Cheyenne Frontier Days and failed to do so.  Ms. Hutchison argues that Ms. Foster did not receive such reports because "[t]here is no documentation" of the reports and that such reports are "inadmissible hearsay" that "does not state when it was reported or by whom."  *Id.* at 3-4, ¶ 21.  As discussed in the Court's ruling on Ms. Hutchison's motion to strike, Murdoch's evidence is not inadmissible hearsay.  Furthermore, the fact that there is no documentation of the reports that Ms. Foster received and that Ms. Foster does not specify who provided such reports and at what time is not a denial.  Accordingly, the Court deems this fact admitted.

[6] Ms. Hutchison denies this fact, arguing that it is "[i]nadmissible hearsay," there is "no documentation of Plaintiff requesting to work remotely or of the store management team complaining that Plaintiff wanted to work remotely," and that Ms. Foster's questioning as to "Plaintiff's dedication to her current position . . . does not

"continued their complaints [to Ms. Foster] reflecting increased concern regarding Plaintiff's attendance, lack of store presence, and management style."  *Id.*, ¶ 23.[7]

On September 6, 7, and 8, 2021, Ms. Hutchison informed her employees that she would not be at work due to strep throat.  Docket No. 79 at 10, ¶ 24.  Ms. Foster approved Ms. Hutchison taking vacation time in September 2021.  *Id.*, ¶ 27.  Ms. Marriott and Ms. Chappell reported to Ms. Foster that Ms. Hutchison was not present at the store on September 5, 6, 10, 13-17, and 22-24 of 2021.  Docket No. 69 at 5, ¶ 24.[8] At the end of September 2021, Ms. Foster received "numerous complaints" from the management team at the Cheyenne store about Ms. Hutchison regarding her "attendance, lack of store presence, and work performance."  *Id.* at 6, ¶ 26.[9]

Ms. Marriott told Ms. Foster that "store employees would not complain directly to Plaintiff because she would get angry, and they were fearful she would terminate their

---

track with Plaintiff's employment history."  Docket No. 79 at 4, ¶ 22.  As discussed in the Court's ruling on Ms. Hutchison's motion to strike, Murdoch's evidence is not inadmissible hearsay.  Furthermore, the fact that there is no documentation of the complaints and that Mr. Foster's questioning of Ms. Hutchison's dedication was not supported by Ms. Hutchison's prior employment history is not a denial.  Accordingly, the Court deems this fact admitted.

[7] Ms. Hutchison denies this fact, arguing that "[t]here were no formal complaints made against Plaintiff."  Docket No. 79 at 4, ¶ 23.  This is not a denial of the fact that Ms. Marriott, Mr. LaRose, and Ms. Chappell complained of Ms. Hutchison to Ms. Foster.  Accordingly, the Court deems this fact admitted.

[8] Ms. Hutchison denies this fact, arguing that she "was never made aware of these complaints" and that there is "no documentation of what Marriott and Chappell reported to Foster other than Foster's notes, which were created after Plaintiff's termination."  Docket No. 79 at 4, ¶ 24.  This is not a denial of that fact that Ms. Foster was informed of Ms. Hutchison's absences.  Accordingly, the Court deems this fact admitted.

[9] Ms. Hutchison denies this fact, arguing that there were "no formal complaints made against Plaintiff" and that "Foster's notes were summarized after Plaintiff's termination and then destroyed."  Docket No.79 at 4, ¶ 26.  For the reasons discussed in *supra* n.8, the Court deems this fact admitted.

5

employment, as she did with Winters." *Id*., ¶ 27.[10]  Mr. LaRose told Ms. Foster that he

would open the Cheyenne store "even when he was not scheduled to open because he

was concerned that Plaintiff would fail to show up when scheduled, or fail to

communicate clearly when another manager was to open." *Id*., ¶ 29.[11]

On November 10, 2021, Ms. Foster and Tory Atkins, Chief of Human

Resources,[12] told Ms. Hutchison that she was being terminated.  Docket No. 69 at 3, 8,

¶¶ 7, 41. [13]  Ms. Foster made the decision to terminate Ms. Hutchison.  Docket No. 79 at

10, ¶ 33.  Ms. Foster was not aware of Ms. Hutchison's sexuality at the time of Ms.

Hutchison's termination.  Docket No. 69 at 8, ¶ 42. [14]

---

[10] Ms. Hutchison denies this fact, arguing that it is "[i]nadmissible hearsay" and that "Winters employment was terminated after multiple employees alleged he was stealing" and that he was terminated "with the knowledge and approval of Foster." Docket No. 79 at 4-5, ¶ 27.  As discussed in the Court's ruling on Ms. Hutchison's motion to strike, Murdoch's evidence is not inadmissible hearsay.  Ms. Hutchison does not deny that Ms. Marriott told Ms. Foster that store employees did not complain to Ms. Hutchison due to a fear of termination.  Accordingly, the Court deems this fact admitted.

[11] Ms. Hutchison denies this fact, arguing that it is "inadmissible hearsay." Docket No. 79 at 5, ¶ 29.  Ms. Hutchison claims that "Defendant has not produced any documentation of schedules" and that, excluding the first day of Cheyenne Frontier Days when Mr. LaRose overslept, "there was always a manager present to open the store on time."  *Id*.  For the reasons discussed in *supra* n.10, the Court deems this fact admitted.

[12] Ms. Hutchison disputes Murdoch's assertion of fact – that on September 15, 2020, Ms. Foster and Mr. Atkins addressed "concerns with Plaintiff regarding her need to improve as a store manager," Docket No. 69 at 3, ¶ 7, – but does not dispute that Mr. Atkins is Chief of Human Resources.  *See* Docket No. 79 at 1, ¶ 7.

[13] Ms. Hutchison denies Murdoch's statement of fact at Docket No. 69 at 8, ¶ 41. Docket No. 79 at 6, ¶ 41.  However, Ms. Hutchison's denial is not responsive to ¶ 41, but rather ¶ 42.  *See* Docket No. 69 at 8, ¶¶ 41-42.  The Court assumes that the reference to ¶ 41 in Ms. Hutchison's denial is a typographical error and that Ms. Hutchison denies ¶ 42 and admits ¶ 41 because she does not dispute in her briefing that she was terminated on November 10, 2021.  *See* Docket No. 79 at 13 ("Plaintiff was terminated on November 10, 2021.").

[14] Ms. Hutchison denies this fact, arguing that Ms. Foster learned of Ms. Hutchison's sexual orientation from Elise Chadelle, a manager at Murdoch's store in Silverthorne, Colorado.  Docket No. 79 at 6, ¶ 41.  Ms. Hutchison argues that she had

I.    **LEGAL STANDARD**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if,

under the relevant substantive law, it is essential to the proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying a lack of

_____

spoken with Ms. Chadelle "about [Ms. Hutchison's] partner, Tiffany."  *Id.*  In support of
her denial, Ms. Hutchison refers to her declaration, in which she states that she
"believe[s]" that Ms. Foster learned of Ms. Hutchison's sexual orientation from Ms.
Chadelle, who was "aware" that Ms. Hutchison was in a "long-term . . . lesbian
relationship."  Docket No. 79-1 at 8, ¶ 37.  Ms. Hutchison's mere belief that Ms. Foster
was aware of Ms. Hutchison's sexuality does not raise a genuine dispute.  *See Epps v.
City & Cnty. of Denver,* 588 F. Supp. 3d 1164, 1169 (D. Colo. 2022) ("conclusory
statements based merely on conjecture, speculation, or subjective belief do not
constitute competent summary judgment evidence").  Ms. Hutchison further argues that
Ms. Foster knew Ms. Hutchison was a lesbian because Ms. Hutchison "began
introducing her partner to her management team," which did not include Ms. Foster.
Docket No. 79 at 6, ¶ 41.  In support of this argument, Ms. Hutchison cites to a
message she sent to Mr. LaRose, Ms. Chappell, and Stephanie Kettula, in which Ms.
Hutchison stated that she had "someone coming by to pick up feed for me.  She's got
my card, so it can go under my account."  Docket No. 79-7 at 70.  Ms. Hutchison does
not explain how this message, which does not involve Ms. Foster, disputes Ms. Foster's
assertion that she did not know that Ms. Hutchison was a lesbian.  Accordingly, the
Court deems this fact admitted.

evidence for the nonmovant on an essential element of the nonmovant's claim."
*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations
omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving
party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of
Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The
nonmoving party may not rest solely on the allegations in the pleadings, but instead
must designate "specific facts showing that there is a genuine issue for trial." *Celotex
Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To defeat a motion for
summary judgment, the nonmovant's evidence, including testimony, must be based on
more than mere speculation, conjecture, or surmise," and "[u]nsubstantiated allegations
carry no probative weight." *SEC v. GenAudio Inc.*, 32 F.4th 902, 920-21 (10th Cir.
2022) (citations and alterations omitted). When reviewing a motion for summary
judgment, a court must view the evidence in the light most favorable to the non-moving
party. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

## II.   ANALYSIS

### A.   <u>**Motion to Strike**</u>

Ms. Hutchison moves to strike statements from various declarations cited in
Murdoch's motion for summary judgment. Docket No. 78 at 3-6. Ms. Hutchison argues
that the declarations are "riddled with inadmissible hearsay statements." *Id.* at 6. She
contends that the declarations "include numerous out-of-court statements relayed by
individuals who are not the declarants themselves." *Id.* at 6-7. Specifically, Ms.
Hutchison argues that Murdoch's is using the declarations to "recount complaints from
other employees about Ms. Hutchison, which were conveyed to the affiants and are now

being introduced to substantiate claims regarding her job performance," even though
the affiants lack personal knowledge. *Id.* at 7.

Murdoch's argues that the identified statements are not hearsay because they
are not being offered for the truth of the matter asserted, but rather for the "effect on
another person." Docket No. 84 at 2-3 (emphasis omitted). Specifically, Murdoch's
argues that the statements are not being offered to prove that Ms. Hutchison engaged
in the conduct that is the subject of the complaints. *Id.* at 3. Murdoch's contends that
"[s]tatements about the performance of coworkers from employees to their supervisors
who ultimately make employment decisions are admissible in full when offered to show
a defendant manager's state of mind when making an employment decision, and to
show that the manager believed that there were legitimate reasons for her decision to
terminate a problem employee." *Id.* at 3-4. Alternatively, even if the statements are
hearsay, Murdoch's argues that the statements can be presented in an admissible form
at trial because the declarants have personal knowledge of the content of the
statements. *Id.* at 5-6.

"Hearsay" is defined as a statement that "the declarant does not make while
testifying at the current trial or hearing" and that a "party offers in evidence to prove the
truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Therefore, a
statement that is not offered for the truth of the matter asserted, but rather offered to
show the effect that the statement had on the listener, is not hearsay under Fed. R.
Evid. 801(c). *See Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir.
1993) ("Statements offered for the effect on the listener . . . are generally not hearsay.").
The following challenged statements are statements that were directed to Ms. Foster,

but were included in the declarations of individuals that were not the speakers of the

original statement: Statement 11, that portion of Statement 12 that states Ms. Foster

"receiv[ed] additional complaints . . . that Ms. Hutchison was away from the store

frequently with no communication with her staff," and Statements 13, 14, 18, 19, 20, 21,

23, 24, 25, and 26 of Ms. Foster's declaration.  Docket No. 78 at 3-5.  The Court finds

that these challenged statements are not hearsay because Murdoch's is offering the

statements to show the effect they had on Ms. Foster's conduct, rather than for the truth

of the matter asserted.  *See* Fed. R. Evid. 801(c)(2).  Specifically, Murdoch's relies on

the statements to demonstrate the effect the statements had on Ms. Foster's decision to

terminate Ms. Hutchison's employment and not to show that the complaints regarding

Ms. Hutchison were true.  Out-of-court statements are admissible to show the effect

they had on an employer in making employment decisions.  *See Faulkner*, 3 F.3d at

1434 (holding that the defendant's "business justifications" for refusing to hire the

plaintiffs were "nonhearsay testimony" because the business justifications were used to

show the effect it had on the defendant's decision not to hire the plaintiffs); *Velez v. SCL

Health-Front Range, Inc.*, No. 14-cv-02179-PAB-CBS, 2015 WL 9315574, at *2 & n.2

(D. Colo. Dec. 23, 2015) (finding that an email that raised "concerns about plaintiff's

performance" was not inadmissible hearsay because it was "not offer[ed] . . .  to prove

the truth of [the] criticism of plaintiff, but rather offer[ed] to show the effect on the

listener," the employer).

 Another category of statements that Ms. Hutchison challenges are ones made by

declarants in their declarations.  For example, Statements 8, 9, that portion of

Statement 12 that states Ms. Foster "discussed concerns with Ms. Hutchison regarding

her attendance and store presence, communication, and perception" of Ms. Foster's declaration, Statements 3 and 4 of Mr. Atkins's declaration, Statements 11 and 12 of Mr. LaRose's declaration, and Statements 14 and 16 of Ms. Chappell's declaration are statements made by the declarants themselves. *See id*. at 3-6. "At the summary judgment stage, the parties need not submit evidence in a form admissible at trial." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Rather, the "content or the substance of the evidence must be admissible." *Id.* Here, Ms. Foster, Mr. Atkins, Mr. LaRose, and Ms. Chappell can testify about their own statements at trial.

The Court finds that Statements 6[15], 7, 8, and 9 of Mr. Atkins's declaration are inadmissible hearsay. These statements consist of Ms. Foster's communications to Mr. Atkins. However, it is undisputed that Ms. Foster, not Mr. Atkins, made the decision to terminate Ms. Hutchison. Docket No. 79 at 10, ¶ 33. Therefore, these statements are not admissible to show the effect they had on Murdoch's decision to terminate Ms. Hutchison. *See McInnis v. Fairfield Communities, Inc.,* 458 F.3d 1129, 1143 (10th Cir. 2006) (holding that emails, which the employer argued were admissible nonhearsay that related to the employer's decision to terminate the plaintiff, were inadmissible because

---

[15] In Statement 6, Mr. Atkins states that "Ms. Marriott and Ms. Chappell reported to Ms. Foster that Ms. Hutchison was not in the store" on specific dates. Docket No. 78 at 5. However, the basis for this statement is hearsay. Mr. Atkins knew of Ms. Marriott's and Ms. Chappell's report to Ms. Foster because it "was reported to [him] by Ms. Foster." *Id.* Therefore, Statement 6 is not admissible in its entirety. *See Fuller v. Old Dominion Freight Line, Inc.*, No. 17-cv-00080-RBJ, 2018 WL 2335696, at *2 (D. Colo. May 23, 2018) (striking statements from a declaration because they were "entirely based on hearsay" and did not "come from [the declarant's] personal knowledge").

neither of the email's recipients "made the decision to terminate" the plaintiff). The Court will grant Ms. Hutchison's motion to strike these statements.[16]

Accordingly, the Court will grant in part and deny in part Ms. Hutchison's motion to strike.

### B. Motion for Summary Judgment

Ms. Hutchison brings a claim under Title VII, 42 U.S.C. § 2000e-2(a), for disparate treatment on the basis of her sex,[17] Docket No. 64 at 17-18, and claims under the FMLA for interference with her rights under the FMLA and retaliation for engaging in FMLA-protected conduct, 29 U.S.C. § 2615(a). *Id.* at 19-20. Murdoch's moves for summary judgment on all of Ms. Hutchison's claims. Docket No. 69 at 1.

#### 1. Claim One - Title VII Disparate Treatment Claim

Ms. Hutchison alleges that Murdoch's discriminated against her "in the terms and conditions of her employment and disparately on the basis of her sex" and that Ms. Hutchison's "sex and/or her being a lesbian was the motivating factor(s) for the unlawful employment actions Murdoch's took against her." Docket No. 64 at 18, ¶¶ 161-163.

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

---

[16] Ms. Hutchison asks the Court to "disregard" certain assertions of fact in Murdoch's motion for summary judgment. Docket No. 78 at 7. Because all of the assertions of fact that Ms. Hutchison objects to are supported by at least one piece of admissible evidence, even with the Court striking certain statements from Mr. Atkins's declaration, the Court will not grant Ms. Hutchison's request.

[17] Discrimination "because of . . . sex" under Title VII includes discrimination on the basis of sexual orientation. *See Bostock v. Clayton Cnty, Ga.*, 590 U.S. 644, 662 (2020).

individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Such claims can be demonstrated either by "direct evidence that a workplace policy,

practice, or decision relies expressly on a protected characteristic" or by "using the

burden-shifting framework set forth in [*McDonnell Douglas Corp. v. Green,* 411 U.S.

792, 802-04 (1973)]."  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015).[18]

    Generally, to establish a prima facie case of disparate treatment, a plaintiff must

show that (1) she "belongs to a protected class;" (2) she suffered an "adverse

employment action;" and (3) the adverse employment action occurred under

circumstances giving "rise to an inference of discrimination."  *Ibrahim v. All. for*

*Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021).  A plaintiff's burden at

the prima facie stage is "not onerous."  *Bennett v. Windstream Commc'ns, Inc.*, 792

F.3d 1261, 1267 (10th Cir. 2015) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S.

248, 253 (1981)).

    Murdoch's does not contest that Ms. Hutchison belongs to a protected class or

that her termination constitutes an adverse employment action.  Murdoch's argues that

Ms. Hutchison cannot establish a prima facie case because the undisputed facts do not

demonstrate that Ms. Hutchison's termination occurred under circumstances that give

rise to an inference of discrimination.[19]  Docket No. 69 at 10-13.  Specifically, Murdoch's

---

[18] Ms. Hutchison and Murdoch's both appear to analyze the disparate treatment claim under the *McDonnell Douglas* framework and do not discuss direct evidence of discrimination.  *See generally* Docket Nos. 69, 79.  Because neither party argues that Ms. Hutchison's disparate treatment claim involves direct evidence of discrimination, the Court will evaluate the claim under the *McDonnell Douglas* framework.

[19] Murdoch's argues that Ms. Hutchison cannot establish that she was qualified for her position and thus cannot meet her burden to make a prima facie showing of discrimination.  Docket No. 69 at 9, 11.  However, as Ms. Hutchison notes, Docket

argues that the undisputed facts show that Ms. Foster did not know Ms. Hutchison was a lesbian at the time of termination.  *Id.* at 12.  Furthermore, Murdoch's argues that Ms. Hutchison's allegations of "certain derogatory, offensive, or inappropriate comments" do not suffice to create an inference of discrimination absent evidence that the comments "played a part" in Ms. Hutchison's termination.  *Id.* at 13.

Ms. Hutchison argues that there is a genuine dispute of material fact as to whether her termination occurred under circumstances that give rise to an inference of discrimination.  Docket No. 79 at 13-14.  Specifically, Ms. Hutchison claims that the timing of her termination, "only *weeks* after she began coming out, combined with the vague and inconsistent reasons provided by the Defendant . . . reasonably infers" that Ms. Hutchison's sexual orientation and gender played "significant roles" in the decision to terminate her employment.  *Id.* at 14.

The Court finds that Ms. Hutchison fails to raise a genuine issue of material fact that her termination occurred under circumstances that give rise to an inference of discrimination.  "[A]n employer's knowledge of the employee's protected status is part and parcel of establishing a status-based discrimination claim."  *Gamble v. Fieldston Lodge Nursing & Rehab. Ctr.*, 697 F. Supp. 3d 112, 121 (S.D.N.Y. 2023).  It is undisputed that Ms. Foster made the decision to terminate Ms. Hutchison's employment.  Docket No. 79 at 10, ¶ 33.  It is further undisputed that Ms. Foster did not

---

No. 79 at 13, whether a plaintiff is qualified for her position is not a necessary element of a prima facie case of disparate treatment.  *See Ibrahim*, 994 F.3d at 1196.

know of Ms. Hutchison's sexual orientation at the time of Ms. Hutchison's termination.
Docket No. 69 at 8, ¶ 42.[20]

Ms. Hutchison further argues that Murdoch's "vague and inconsistent" reasons
for her termination raise an inference of discrimination. *Id.* at 14. The fact that
Murdoch's reasons for terminating Ms. Hutchison's employment are allegedly "vague
and inconsistent" may raise a genuine issue as to whether Ms. Hutchison was unfairly
terminated; however, Title VII does not protect against such terminations. *See Collins
v. Am. Red Cross*, 715 F.3d 994, 999 (7th Cir. 2013) ("Title VII does not forbid sloppy,
mistaken, or unfair terminations; it forbids discriminatory or retaliatory terminations.");
*Petersen v. Utah Dep't of Corr.,* 301 F.3d 1182, 1188 (10th Cir. 2002) (finding that an
employer "could be unconscionably rude and unfair" to a plaintiff "without violating Title
VII" and that an employer's treatment of the plaintiff "would constitute an unlawful

---

[20] Even assuming that there is sufficient evidence of Ms. Foster's knowledge,
mere knowledge of Ms. Hutchison's protected status does not raise a genuine issue of
material fact as to whether Ms. Foster was motivated by Ms. Hutchison's protected
status in terminating her employment. *See Doucett v. D.R. Horton, Inc.*, 2010 WL
816844, at *15 (D.N.M. Feb. 16, 2010) ("if demonstrating mere knowledge on the part of
an employer of protected activity or protected status were sufficient to make a plaintiff's
*prima facie* case, a plaintiff's burden at this stage would be almost nonexistent");
*Williams v. N.Y.C. Transit Auth.*, 2014 WL 11474810, at *4 (E.D.N.Y. Sept. 16, 2014)
(unpublished) (finding that plaintiff failed to meet prima facie burden to show
defendant's discriminatory intent where plaintiff only "offered" that defendant had an
"awareness" of plaintiff's race or age).
    A temporal proximity between Ms. Foster learning of Ms. Hutchisons's sexual
orientation and Ms. Hutchison's termination could support an inference of discrimination
at the prima facie stage. *Gamble*, 697 F. Supp. 3d at 121 (holding that "temporal
proximity alone can be sufficient to show an inference of discrimination at the prima
facie stage" where three months elapsed between the disclosure of gay plaintiff's
engagement video and her termination). However, there are no undisputed facts as to
what time, if at any time, Ms. Foster learned of Ms. Hutchison's sexual orientation.

employment practice under Title VII only if [employer] had the requisite intent" meaning that the employer "mistreated [plaintiff] because of [plaintiff's] race or religion").

Ms. Hutchison must raise a genuine issue as to whether she was terminated under circumstances giving rise to an inference of discrimination on the basis of her sexual orientation. Because she fails to do so, Ms. Hutchison cannot meet her prima facie burden. Accordingly, the Court will grant summary judgment for Murdoch's on Ms. Hutchison's Title VII claim.

### 2. Claim Two - FMLA Claim

FMLA requires employers to allow their employees up to twelve weeks of leave in a year if the leave is requested for, among other things, an employee's "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "At the end of the leave, the employee must be reinstated to his or her position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1261 (10th Cir. 1998) (citing 29 U.S.C. § 2614(a)(1)). Employers are prohibited from interfering with an employee who exercises his or her rights under FMLA and from discriminating against "any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Courts have recognized two theories of recovery on FMLA claims under § 2615: a retaliation or discrimination theory and an entitlement or interference theory. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*,

298 F.3d 955, 960 (10th Cir. 2002).  Plaintiff asserts her FMLA claim under both

theories.  Docket No. 64 at 19-20.[21]

### a.  Retaliation

Ms. Hutchison claims that Murdoch's "took adverse action against Ms. Hutchison

in retaliation for exercising her federally protected rights . . . by reprimanding her for

taking FMLA leave" from April 21, 2021 to May 5, 2021.  Docket No. 64 at 19, 20,

¶¶ 171, 180.  She states that Murdoch's adverse action prevented her "from exercising

her rights and utilizing the remainder of her eligible FMLA leave."  *Id.* at 20, ¶ 179.  Ms.

Hutchison asserts that she "opposed Defendant's attempts to reprimand her for

exercising her rights under the FMLA" and opposed "Defendant's assertion that she

should have told her team why she was taking leave."[22]  *Id.*, ¶ 181.  She claims that

---

[21] Although Ms. Hutchison brings both her FMLA retaliation claim and FMLA interference claim under her second claim for relief, Docket No. 64 at 19-20, the Court will treat each claim as distinct because "[t]hese two theories of recovery are separate and distinct theories that require different showings, differ with respect to the burden of proof, and differ with respect to the timing of the adverse action."  *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014) (alterations, internal quotations, and citation omitted).  Furthermore, the amended complaint alleges both a retaliation and interference with rights theory, *see* Docket No. 64 at 19-20, and both parties analyze Ms. Hutchison's FMLA retaliation and interference claims separately.  *See* Docket No. 69 at 14-19; Docket No. 79 at 14-19.

[22] The amended complaint states that "Plaintiff opposed Defendant's attempts to reprimand her for exercising her rights under the FMLA" and she "opposed Defendant's assertion that she should have told her team why she was taking leave."  Docket No. 64 at 20, ¶ 181.  In her response, however, Ms. Hutchison does not support any disputed or undisputed facts describing what her opposition consisted of.  Rather, Ms. Hutchison asserts this fact, along with citations to evidence, in the argument section of her response.  Docket No. 79 at 16 ("Plaintiff immediately told Foster that reprimanding her for taking protected leave was not legal.").  This is not permitted under the Court's practice standards.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.v ("If the party opposing the motion believes that there exist additional **disputed** questions of fact . . . the party shall, in a separate section of the party's brief styled 'Statement of Additional Disputed Facts,' set forth in simple, declarative sentences . . . each additional, material disputed fact.").  Unlike the fact

Murdoch's retaliated against her by terminating her employment on November 10, 2021. *Id.*, ¶ 182.

Retaliation claims under FMLA are considered under the burden-shifting analysis of *McDonnell Douglas*, 411 U.S. at 802-04. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003). "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation." *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). If the plaintiff successfully establishes her prima facie case, the defendant must offer a legitimate, non-retaliatory reason for the employment action. *Id.* "The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Id.* (citation omitted).

To state a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Id.* at 1171. Murdoch's does not contest that Ms. Hutchison engaged in a protected activity when she took FMLA leave from April 21, 2021 to May 5, 2021. *See* Docket No. 69 at 18-19. Nor does Murdoch's contest that Ms. Hutchison's termination constitutes an adverse action. *Id.* Rather, Murdoch's argues that Ms. Hutchison cannot establish a prima facie case of retaliation because she cannot show that there is a causal link between her taking FMLA leave and her termination. *Id.* Ms. Hutchison responds that causation is

---

section of a response to a summary judgment motion, Murdoch's has no obligation under the Court's Practice Standards or Rule 56 to admit or deny, or treat as an assertion of fact, evidence cited in the argument section. As a result, the Court will not consider such evidence.

shown because there is "[t]emporal proximity" between her FMLA leave and "Foster's reprimand of Plaintiff for taking protected leave."  Docket No. 79 at 17.

Murdoch's fails to address the adverse action that Ms. Hutchison alleges in her amended complaint, namely, Ms. Foster's reprimand of Ms. Hutchison when Ms. Hutchison returned from her FMLA leave.  Murdoch's focuses solely on Ms. Hutchison's termination.  Docket No. 69 at 18-19.  Ms. Hutchison, however, does not address whether there is a temporal connection, or any causation, between her FMLA leave and her termination.  *See* Docket No. 79 at 17-19.  She only argues that Murdoch's reasons for her termination are pretextual and that there is a temporal connection between her FMLA leave and the May 13, 2021 reprimand.  *See id*.  Therefore, Ms. Hutchison has not met her prima facie burden to show that her termination was a retaliatory act for her taking FMLA leave.  The Court finds that Murdoch's is entitled to summary judgment on that portion of Ms. Hutchison's FMLA claim that alleges that her termination was a retaliatory act.  As a result, the Court will only consider the May 13, 2021 reprimand as a potential retaliatory act in its analysis.

In its reply brief, Murdoch's argues that Ms. Hutchison's "allegation that Foster's reprimand constitutes retaliatory conduct is raised for the first time in her Response."  Docket No. 83 at 9.  The Court disagrees.  The amended complaint alleges that Murdoch's took adverse action "by reprimanding [Ms. Hutchison] for taking FMLA leave."  Docket No. 64 at 20, ¶ 180.  It is undisputed that on May 13, 2021, Ms. Foster spoke with Ms. Hutchison "about concerns regarding her lack of communication with her store team and told Plaintiff that she should have told her team how long she would be out on FMLA leave."  Docket No. 69 at 4, ¶ 13.  On May 13, 2021, Ms. Foster further

told Ms. Hutchison that there was an "anonymous complaint about Plaintiff due to her being absent from the store" and Ms. Foster questioned Ms. Hutchison's "commitment to her team."  Docket No. 79 at 6-7, ¶ 3.

Murdoch's is entitled to summary judgment on that portion of Ms. Hutchison's FMLA claim that alleges her termination was a retaliatory act.  However, Murdoch's has not moved for summary judgment on that portion of Ms. Hutchison's claim that alleges Murdoch's retaliated against Ms. Hutchison for taking FMLA leave by reprimanding her upon return from FMLA leave on May 31, 2021.  As a result, that portion of Ms. Hutchison's FMLA retaliation claim that concerns the May 13, 2021 reprimand survives.

### b.  Interference with Rights

As to this theory for Ms. Hutchison's interference claims, Ms. Hutchison alleges that she was "eligible for over nine (9) more weeks of FMLA leave but was prevented from exercising her right to FMLA leave by Defendant's unlawful conduct."  Docket No. 64 at 19, ¶ 174.  She claims that she "took additional time off of work under Murdoch's sick and vacation leave policies as late as October 29 through November 2, 2021," *id*., ¶ 172, and "[h]er days off from work should have been protected leave under the FMLA, but for threats and intimidation by Defendant, including Ms. Foster's reprimand of Ms. Hutchison when she exercised her right to FMLA leave between April 26, 2021, and May 5, 2021."  *Id.*, ¶ 173.

To prevail on a claim for FMLA interference, a plaintiff must show "(1) that he or she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his or her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights."  *Metzler*, 464

F.3d at 1180 (alterations and citation omitted).  Once a plaintiff shows that the first two elements of her interference claim are satisfied, "the employer then bears the burden of demonstrating that the adverse decision was not related to the exercise or attempted exercise of the employee's FMLA rights."  *Dalpiaz*, 760 F.3d at 1132 (internal quotation, alteration, and citation omitted).

Murdoch's argues that Ms. Hutchison cannot show that she was entitled to FMLA leave because Ms. Hutchison was not suffering from a "qualifying health condition" that would have qualified her for leave in "fall of 2021."  Docket No. 69 at 15.  Specifically, Murdoch's argues that Ms. Hutchison was not "prevent[ed]" from "performing the essential elements of her job."  *Id.*  Furthermore, Murdoch's argues that the May 13, 2021 reprimand is not an adverse action that interfered with Ms. Hutchison's right to take FMLA leave.  *Id.* at 16.

Ms. Hutchison responds that she was eligible for FMLA leave because she had a serious health condition as defined in 29 U.S.C. § 2611(11).  Docket No. 79 at 16.  She notes that she had been "undergoing continuous treatment by a qualified healthcare provider" and had a "chronic condition"[23] as defined in 29 C.F.R. § 825.115(c).  *Id.*  Ms.

---

[23] The amended complaint does not allege that Ms. Hutchison had a "chronic condition" that entitled her to FMLA leave in Fall 2021.  *See* Docket No. 64 at 19-20. Rather, she alleges that "[p]rior to and after her FMLA leave in April and May 2021" she was "undergoing and did undergo continuous treatment for a serious health condition by a medical provider" as defined by 29 C.F.R. § 825.115(a).  *Id.* at 19, ¶ 175. Accordingly, the Court will only determine if there is a genuine dispute as to whether Ms. Hutchison was entitled to FMLA leave because she was suffering from a serious health condition that involved "[i]ncapacity and treatment" as defined in § 825.115(a). Although the amended complaint asserts that Ms. Hutchison was undergoing continuous treatment as "defined by 29 U.S.C. § 825.114(a)," the Court assumes that Ms. Hutchison means to refer to 29 C.F.R. § 825.115(a) as that is the regulation that pertains to continuing treatment.

Hutchison argues that Murdoch's interfered with her FMLA rights by "(1) reprimanding her for taking leave; (2) intimidating her out of requesting and taking additional leave; and (3) failing to inform her that her time off from work from September-November 2021 qualified for additional FMLA leave."[24]  *Id.* at 15.

The Court first addresses whether Ms. Hutchison was entitled to FMLA leave. Murdoch's argues that Ms. Hutchison was not suffering from a serious health condition that qualified her for FMLA leave because "Plaintiff told her therapist that she was doing 'good' in the fall of 2021" and Ms. Hutchison was "performing her job even when she was out of the store throughout fall 2021." Docket No. 69 at 15.  The Court rejects Murdoch's argument that this is sufficient to show that, as a matter of law, Ms. Hutchison was not suffering from a qualifying health condition and thus not eligible to take FMLA leave in Fall 2021.

"[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider."  29 U.S.C. § 2611(11)(B).  "A serious health condition involving

---

[24] The amended complaint does not allege that Murdoch's failed to inform Ms. Hutchison that her time off from work qualified for additional FMLA leave, Docket No. 64 at 19-20, and there are no asserted facts that address this allegation.  Accordingly, the Court will not consider whether Murdoch's interfered with Ms. Hutchison's FMLA rights by failing to inform her of additional FMLA eligible leave since it is not part of Ms. Hutchison's interference claim.

continuing treatment by a health care provider includes . . . [i]ncapacity and treatment."

29 C.F.R. § 825.115(a).  "Incapacity and treatment" are defined as follows:

> (a) Incapacity and treatment.  A period of incapacity of more than three
> consecutive, full calendar days, and any subsequent treatment or period of
> incapacity relating to the same condition, that also involves:
>
>> (1) Treatment two or more times, within 30 days of the first day of
>> incapacity, unless extenuating circumstances exist, by a health care
>> provider, by a nurse under direct supervision of a health care
>> provider, or by a provider of health care services (e.g., physical therapist) under orders
>> of, or on referral by, a health care provider; or
>>
>> (2) Treatment by a health care provider on at least one occasion, which
>> results in a regimen of continuing treatment under the supervision of the
>> health care provider.
>>
>> (3) The requirement in paragraphs (a)(1) and (2) of this section for
>> treatment by a health care provider means an in-person visit to a health
>> care provider.  The first (or only) in-person treatment visit must take place
>> within seven days of the first day of incapacity.
>>
>> (4) Whether additional treatment visits or a regimen of continuing
>> treatment is necessary within the 30-day period shall be determined by the
>> health care provider.
>>
>> (5) The term extenuating circumstances in paragraph (a)(1) of this section
>> means circumstances beyond the employee's control that prevent the
>> follow-up visit from occurring as planned by the health care provider.
>> Whether a given set of circumstances are extenuating depends on the
>> facts.  For example, extenuating circumstances exist if a health care
>> provider determines that a second in-person visit is needed within the 30-
>> day period, but the health care provider does not have any available
>> appointments during that time period.

*Id*.

Viewing the evidence in the light most favorable to Ms. Hutchison, there is a

genuine dispute as to whether Ms. Hutchison was incapacitated in the fall of 2021 and

received treatment pursuant 29 C.F.R. § 825.115(a).  It is undisputed that Ms.

Hutchison, at the very least, received treatment from a medical provider on October 18,

2021, November 1, 2021, November 8, 2021, and November 11, 2021.  Docket No. 79

at 9, ¶ 21.  In these sessions, Ms. Hutchison told her provider that she took "a day off

from work due to feeling overworked and 'burned out'", that she "[c]alled out of work due

to 'hitting a wall mentally'," and that her "current anxiety continue[s] to be negatively

affected by work."  *Id.*  The fact that Ms. Hutchison reported that she was doing "good"

in the fall of 2021 and was performing her job even when on leave does not mean that

she was not incapacitated for more than three consecutive calendar days in the fall of

2021 such that she would have qualified for FMLA leave.  Docket No. 69 at 15.

Murdoch's does not challenge that Ms. Hutchison was receiving "treatment" as defined

in 29 C.F.R. § 825.115(a).  *See id.*  Based on these facts, a reasonable jury could

conclude that Ms. Hutchison was suffering from a serious health condition that made

her unable to perform the functions of her job in the fall of 2021, as defined under 29

U.S.C. § 2611(11), such that she was entitled to FMLA leave.

Second, the Court addresses whether the May 13, 2021 reprimand constitutes

an adverse action that interfered with Ms. Hutchison's right to take FMLA leave.  "The

Tenth Circuit has recognized that 'interference' with an employee's right to FMLA leave

may include "not only refusing to authorize FMLA leave, *but discouraging an employee

from using such leave.*"  *Schlagel v. Disc. Tire Co. of Colo., Inc.*, No. 23-cv-02909-NYW-

CYC, 2025 WL 316549, at *6 (D. Colo. Jan. 28, 2025) (quoting *Mardis v. Cent. Nat'l

Bank & Tr. of Enid*, 1999 WL 218903, at *2 (10th Cir. Apr. 15, 1999)).  When an

employer "deters an employee" from participating in FMLA-protected activities, such

deterrence is an adverse action because the employer attaches "negative

consequences to the exercise of protected rights" that "chill[s] the employee's

willingness to exercise those rights because he or she does not want to be fired or
disciplined for doing so." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir.
2006) (internal quotation and citation omitted).

Here, Ms. Foster, upon Ms. Hutchison's return from FMLA leave, discussed
"concerns regarding her lack of communication with her store team and told Plaintiff that
she should have told her team how long she would be out on FMLA leave."  Docket No.
69 at 4, ¶ 13.  The Court finds that this statement does not constitute "actionable
discouragement" of Ms. Hutchison taking further FMLA leave.  *See Mardis*, 1999 WL
218903, at *3.  Ms. Foster informed Ms. Hutchison that Ms. Hutchison should tell the
employees she manages how long she will be on FMLA leave.  The FMLA does not
prohibit an employer from requiring an employee to do so.  *See Schlagel*, 2025 WL
316549, at *6 (noting that an "employer's statements that merely inform an employee" of
the "limitations" of an employee's entitlements under FMLA "likely do not rise to the level
of actionable discouragement") (internal quotation omitted); *Ford v. Brennan*, 2023 WL
5606233, at *3 n.4 (10th Cir. Aug. 30, 2023) (holding than an email from plaintiff's
supervisor that told plaintiff that he was required to provide documentation of his FMLA
leave was not an adverse action that interfered with plaintiff's right because it was a
"clarification" of "documentation obligations under FMLA, not a threat").

However, Ms. Foster further told Ms. Hutchison that there was an "anonymous
complaint about Plaintiff [] due to her being absent from the store" and that Ms. Foster
"questioned" Ms. Hutchison's "commitment to her team."  Docket No. 79 at 6-7, ¶ 3.
The Court finds that, viewing the evidence in the light most favorable to Ms. Hutchison,
this statement constitutes active discouragement of Ms. Hutchison taking further FMLA

leave.  Ms. Foster did not state whether Ms. Hutchison's absences, that were the
subject of the anonymous complaint, included Ms. Hutchison's absences while she was
on FMLA leave.  Ms. Foster did not clarify whether Ms. Hutchison's absences on FMLA
leave were the absences that caused Ms. Foster to question Ms. Hutchison's
commitment to the employees Ms. Hutchison manages.

The Court rejects Murdoch's argument that the fact that Ms. Hutchison "never
actually attempted to exercise additional FMLA rights" means she does not have a
FMLA interference claim.  Docket No. 69 at 16.  As discussed previously, the Court
finds that there this a genuine issue of material fact as to whether Ms. Hutchison was
suffering from a condition that would entitle her to FMLA leave and that, instead of using
FMLA leave for absences in Fall 2021, Ms. Hutchison took vacation and sick leave.
*See* Docket No. 79 at 10, ¶ 27.   A reasonable jury could conclude that Ms. Foster
attached "negative consequences" to Ms. Hutchison taking further FMLA leave by
implying that further absences, even those while on FMLA leave, would cause Ms.
Hutchison to be the subject of further complaints and reprimands.  *See Stallings*, 447
F.3d at 1050.  Furthermore, a reasonable jury could conclude that the May 13, 2021
reprimand chilled Ms. Hutchison's willingness to take further FMLA leave because she
did not want to be fired or disciplined for doing so.  *Id.*

Given that Ms. Hutchison has made a prima facie case of FMLA interference,
Murdoch's now bears the burden to show that the May 13, 2021 reprimand, specifically,
the portion where Ms. Foster addressed the anonymous complaint regarding Ms.
Hutchison's absences and questioned Ms. Hutchison's commitment to her employees,
was unrelated to Ms. Hutchison's FMLA leave.  *Dalpiaz*, 760 F.3d at 1132.  Murdoch's

argues that its decision to terminate Ms. Hutchison was unrelated to Ms. Hutchison's
FMLA leave, but does not address whether Ms. Foster's May 13, 2021 reprimand,
concerning the anonymous complaint and Ms. Foster's questioning of Ms. Hutchison's
commitment to her employees, was unrelated to Ms. Hutchison's FMLA leave.  Docket
No. 69 at 17.  Murdoch's fails to carry its burden.  Accordingly, the Court will deny
summary judgment for Murdoch's on Ms. Hutchison's FMLA interference claim.[25]

### III.  CONCLUSION

Therefore, it is

**ORDERED** that Plaintiff's Motion to Strike Materials Attached to Defendant's
Motion for Summary Judgment [Docket No. 78] is **GRANTED in part** and **DENIED in
part**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 69] is
**GRANTED in part** and **DENIED in part**.  It is further

---

[25] Murdoch's argues that, in the alternative, it is entitled to summary judgment on
Ms. Hutchison's claims based on the after-acquired evidence defense.  Docket No. 69
at 19-20.  However, "after-acquired evidence of misconduct cannot act as a complete
bar to recovery in an ADEA action, but rather only affects the amount of damages an
employee may recover."  *See Ricky v. Mapco, Inc.*, 50 F.3d 874, 876 (10th Cir. 1995)
(citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362-63 (1995)).  And "the
*McKennon* court also made clear that its analysis applied not only to claims under the
ADEA, but to those under Title VII as well."  *Russell v. Microdyne Corp.*, 65 F.3d 1229,
1238 (4th Cir. 1995).  "Information that an employer learns after it has discharged an
employee is not relevant to the determination of whether an employer violated Title VII
because it necessarily played no role in the actual decision*."  Medlock v. Ortho Biotech,
Inc.*, 164 F.3d 545, 554 (10th Cir. 1999).  *McKennon* also applies to claims brought
under FMLA.  *See, e.g., Smith v. AS Am., Inc.*, 829 F.3d 616, 627 (8th Cir. 2016); *Miller
v. AT & T Corp.*, 250 F.3d 820, 838 (4th Cir. 2001).

**ORDERED** that plaintiff Heather Hutchison's first claim under Title VII is

**DISMISSED with prejudice**.

DATED March 27, 2025.

BY THE COURT:

_____

PHILIP A. BRIMMER
Chief United States District Judge